# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

|  |  |
|---|---|
| SHANGHAI TENCENT PENGUIN FILM CULTURE MEDIA CO., LTD.; SHENZHEN TENCENT COMPUTER SYSTEM CO., LTD.; and TENCENT TECHNOLOGY (BEIJING) CO., LTD., <br><br> Plaintiffs, <br><br> v. <br><br> UNBLOCKTECH TAIWAN TECH CO. LTD., et al., <br><br> Defendants. | **CIVIL NO. 6:23-CV-300-ADA-JCM** |

**PLAINTIFFS' OPENING BRIEF IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS UNBLOCKTECH, DALI TONGDA TECHNOLOGY LIMITED, HK-UB, UNBO STORE-USA, AND HOPE OVERSEAS**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.    BACKGROUND .................................................................................................. 3

    A.    Tencent, Their Business, and Their Copyrights ....................................... 3

    B.    Defaulting Defendants' Piracy Business ................................................... 5

        1.    UnblockTech Is an Internationally Notorious Piracy Business ............. 5

        2.    Defaulting Defendant UnblockTech Was Criminally Prosecuted in Taiwan ................................................................................................. 6

        3.    Defaulting Defendant Dali Tongda and Its Downstream Distributors Are a Concerted Enterprise. .................................................................. 7

        4.    Defaulting Defendants, in Blatant Contempt of the Court, Work in Concert to Subvert U.S. Copyright Laws ............................................. 8

    C.    All Defaulting Defendants Are in Default ............................................... 9

III.    ARGUMENT ..................................................................................................... 10

    A.    Legal Standard ....................................................................................... 10

    B.    Default Judgment Is Procedurally Proper ............................................. 11

    C.    Tencent's Copyright Infringement Claims Are Meritorious ............................ 14

        1.    Tencent's Direct Copyright Infringement Claim (asserted against UnblockTech) ..................................................................................... 14

        2.    Tencent's Contributory Copyright Infringement Claim (against all Defaulting Defendants) ..................................................................... 17

        3.    Defendant UnblockTech's Vicarious Infringement .............................. 21

    D.    Tencent's Requested Relief Is Appropriate ............................................ 22

        1.    Statutory Damages for Eligible Registered Tencent Shows ................. 23

        2.    Actual Damages for All Other Tencent Shows .................................... 26

        3.    Injunctive Relief ................................................................................. 27

IV.    CONCLUSION .................................................................................................. 30

# TABLE OF AUTHORITIES

**Page(s)**

*Alcatel USA, Inc. v. DGI Techs., Inc.*,
166 F.3d 772 (5th Cir. 1999) ............................................................................14, 17

*Am. Broadcasting Cos., Inc. v. Aereo, Inv.*,
134 S. Ct. 2498 (2014) ................................................................................16, 18, 20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................14

*Broadcast Music, Inc. v. Tex Border Management, Inc.*,
11 F. Supp. 3d 689 (N.D. Tex. 2014) .....................................................................30

*Broadcast Music, Inc. v. Xanthas, Inc.*,
855 F.2d 233 (5th Cir. 1988) ..................................................................................17

*BVE Brands, LLC v. Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule A*,
No. 1-22-CV-278-RP, 2023 WL 5108960 (W.D. Tex. June 23, 2023)...................24

*Cunningham v. Politi*,
No. 4:18-cv-00362-ALM-CAN, 2020 WL 1808239 (E.D. Tex. Jan. 26, 2020) .....13

*Desire, LLC v. Manna Textiles, Inc.*,
986 F.3d 1253 (9th Cir. 2021) ................................................................................22

*DISH Network L.L.C. v. Khalid*,
No. H-19-4563, 2021 WL 765709 (S.D. Tex. Feb. 23, 2021)..................18, 20, 23, 25, 28, 29

*DynaStudy, Inc. v. Houston Indep. Sch. Dist.*,
325 F. Supp. 3d 767 (S.D. Tex. 2017) ....................................................................21

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006)................................................................................................28

*F.W. Woolworth Co. v. Contemporary Arts*,
344 U.S. 228 (1952)................................................................................................24

*Fermata Int'l Melodies, Inc. v. Champions Golf Club, Inc.*,
712 F. Supp. 1257 (S.D. Tex. 1989) .......................................................................30

*Fogerty v. Fantasy, Inc.*,
510 U.S. 517 (1994)................................................................................................29

*Gen. Univ. Sys., Inc. v. Lee*,
379 F.3d 131 (5th Cir. 2004) ..................................................................................15

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*Graham v. Coconut LLC*,
No. 4:16-cv-606, 2017 WL 2600318 (E.D. Tex. June 15, 2017) ...............................12, 13, 14

*James v. Frame*,
6 F.3d 307 (5th Cir. 1993) .....................................................................................................23

*Lindsey v. Prive Corp.*,
161 F.3d 886 (5th Cir. 1998).................................................................................................11

*MetroGoldwyn-Myer Studios, Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005)...............................................................................................................21

*Motionware Enters., Inc. v. Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule A*,
No. 1:22-CV-1225-RP, 2023 WL 6977940 (W.D. Tex. Sept. 13, 2023) ...............................24

*Nishimatsu Constr. Co., Ltd. V. Houston Nat'l Bank*,
515 F.2d 1200 (5th Cir. 1975)...............................................................................................11

*On Davis v. The Gap, Inc.*,
346 F.3d 152 (2d Cir. 2001)...................................................................................................26

*Pell & Co., Inc. v. The Rug Market*,
238 F.3d 391 (5th Cir. 2001) .................................................................................................14

*Prep Solns., Ltd. v. Leicht*,
No. 2:22-CV-123-JRG-RSP, 2022 WL 1812298 (E.D. Tex. June 2, 2022)..........................29

*R A Guthrie Co., Inc. v. Boparai*,
No. 4:18-cv-080-ALM-KPJ, 2021 WL 1148957 (E.D. Tex. Mar. 1, 2021)
.............................................................................................................................11, 12, 13, 14, 24, 28

*Strange v. Glob. Virtual Opportunities, Inc.*,
No. 6:18-cv-0180-ADA, 2019 WL 414961 (W.D. Tex. Jan. 8, 2019) (Albright, J.) ..10, 11, 12

*Stross v. Realty Austin, LLC*,
No. 1:20-cv-01071-RP, 2021 WL 2942399 (W.D. Tex. July 13, 2021) ................................22

*Twist & Shout Music v. Longneck Xpress, NP*,
441 F. Supp. 2d 782 (E.D. Tex. 2006)...................................................................................29

*United States v. Padron*,
No. 7:17-cv-00009, 2019 WL 2060308 (S.D. Tex. May 12, 2017).........................................12

165756360.2

## TABLE OF AUTHORITIES (continued)

**Page(s)**

*Universal City Studios Productions LLP v. TickBox TV LLC*,
   No. CV 17-7496-MWF, 2018 WL 1568698 (C.D. Cal. Jan. 30, 2018) ............................18, 20

*US Green Bldg. Council, Inc. v. Wardell*,
   No. 3:14-cv-01541-M-BH, 2016 WL 3752964 (N.D. Tex. June 17, 2016) ...........................24

*Verch v. White Rock Security Grp., LLC*,
   No. 3:19-cv-1457-S, 2020 WL 4550419 (N.D. Tex. June 30, 2020) ...............................26, 27

*Wooten v. McDonald Transit Assocs., Inc.*,
   788 F.3d 490 (5th Cir. 2015) ...............................................................................14

**STATUTES**

17 U.S.C. § 101 .............................................................................................................15

17 U.S.C. § 412 .............................................................................................................23

17 U.S.C. § 502(a) .........................................................................................................28

17 U.S.C. § 504(b) .........................................................................................................26

17 U.S.C. § 504(c) .........................................................................................................24

50 U.S.C. § 3931 ...........................................................................................................10

**OTHER AUTHORITIES**

Fed. R. Civ. P. 55(a) ......................................................................................................10

Fed. R. Civ. P. 55(b)(2)..................................................................................................10

# I.    INTRODUCTION

Plaintiffs Shanghai Tencent Penguin Film Culture Media Co., Ltd., Shenzhen Tencent Computer System Co., Ltd., and Tencent Technology (Beijing) Co., Ltd. (collectively "Tencent") move the Court to grant default judgment and permanent injunctive relief against Defendants UnblockTech Taiwan Co., Ltd. ("UnblockTech"), Dali Tongda Technology Limited ("Dali Tongda"), Unbo Store-USA ("Unbo Store"), HK-UB, and Hongkong Hope Overseas Trading Co. Limited ("Hope Overseas") (collectively, the "Defaulting Defendants"). All Defaulting Defendants have failed to timely file an Answer or otherwise respond to the Complaint, and all of them remain in violation of this Court's preliminary injunction order. Defaulting Defendants are an international piracy enterprise in the business of manufacturing, distributing, and selling infringing streaming devices known as "UBOXs," which contain massive amounts of pirated content and are primarily intended for piracy and facilitating piracy. UBOXs have been identified as "illicit streaming devices," or ISDs. UnblockTech is a Taiwanese manufacturer and distributor of UBOX ISDs. Dali Tongda is a general distributor of UBOXs; Unbo Store, HK-UB, and Hope Overseas are three of Dali Tongda's many storefronts.

Not one of the Defaulting Defendants is licensed to copy or otherwise use Tencent's valuable copyrighted works. Yet each of the Defaulting Defendants has engaged in clear-cut copyright infringement, actionable within the United States, and has ignored its obligations to participate in the U.S. legal system. Despite multiple notices of this lawsuit, UnblockTech continues to manufacture and distribute infringing UBOXs, which enable blatant copyright infringement under the tagline "Paid once, Free forever." UBOXs purpose is to permit users to watch pirated and unlicensed content, including Tencent television shows (the "Tencent Shows"), without authorization or license. Like UnblockTech, the remaining Defaulting Defendants continue to ignore this lawsuit and knowingly distribute and sell infringing UBOXs in violation of

both Tencent's copyrights and this Court's order. Defaulting Defendants Dali Tongda, Unbo Store, HK-UB, and Hope Overseas brazenly operate storefronts and engage in other conduct which both infringes and facilitates infringement by other parties.[1] Defaulting Defendants knowingly and willfully distribute and provide subscribers streaming and IPTV service with unauthorized access to the Tencent Shows at a large scale, or at least did provide such services until their respective storefronts have were closed in response to this lawsuit.

Defaulting Defendants' conduct is wanton and malicious. Each of the Defaulting Defendants has been properly served with the operative Amended Complaint. And each of the Defaulting Defendants has failed to Answer and lacks any apparent litigable defense. Yet each continues selling and distributing the infringing UBOXs, whether themselves or through other channels. Tencent would be substantially prejudiced if final adjudication of its claims was stymied by Defaulting Defendants' inaction and evasive conduct.

Defaulting Defendants are in contempt of this Court. Each of the Defaulting Defendants has been properly served with this Court's Preliminary Injunction Order. *See* Dkt. No. 85 at 2 (Defaulting Defendants "are hereby **RESTRAINED** and **ENJOINED** from manufacturing, selling, advertising, distributing, and/or importing any UBOX products."). But Defaulting Defendants, in willful disregard of the Court's order, continue selling, advertising, distributing, and importing the UBOX products with Tencent's copyrighted works. Declaration of Chao "Wendy" Wang in Support of Plaintiffs' Motion for Default Judgment ¶ 14 ("Wang Decl."). Indeed, Defaulting Defendant Dali Tongda has doubled down on its scheme, apparently closing ephemeral storefronts in the name of HK-UB and Unbo Store, opening new storefronts on Amazon

---

[1] This brief asserts that Defaulting Defendants Unbo Store and HK-UB may continue to infringe via other channels, including by and through Dali Tongda, for whom they acted as storefronts, even though storefronts under the names Unbo Store and HK-UB may have since closed.

and eBay, and continuing to sell infringing UBOXs to the U.S. and leaving Tencent to play "whack-a-mole" to protect its legitimate copyright interests. Rather than comply with the Court-ordered injunction and engage in litigation as the law demands, UnblockTech continues to infringe and its product states that "[t]he media's fraudulent smearing is irrelevant to us." Wang Decl. ¶ 9. Defaulting Defendants make substantial profits from their continuing sales of UBOX in violation of the Court's order, because they pay nothing for their pirated contents.

In this context, Tencent seeks $15,150,000 in statutory damages for the registered Tencent Shows and $27,225,000 in actual damages for the unregistered Tencent Shows against both UnblockTech and Dali Tongda (and their respective downstream infringers, jointly and severally as set forth below). These monetary damages are warranted given the scale of Defaulting Defendants' infringement, their willful and egregious contempt of Court, their disregard for Tencent's copyrights, and their failure to participate in this proceeding such that the true scope of its customer base (and infringement) remains hidden. As such, Tencent respectfully requests that the Court grant this Motion for Default Judgment, which concludes this matter that has been pending for nearly two years.

## II.    BACKGROUND

### A.    Tencent, Their Business, and Their Copyrights

Plaintiffs are Chinese corporations within the Tencent Group. Dkt. No. 89 ("Am. Compl.") ¶ 1. Founded in 1998, Tencent Group is a world-leading internet and technology company that develops innovative products and services to improve the quality of life of people around the world. *Id.* Tencent's businesses include the social communication platform Weixin/WeChat, (which has over one billion users worldwide), videogames (including a 40% stake in the highly popular Fortnite videogame), advertising, FinTech, and cloud computing. *Id.* ¶ 43. Tencent also has a robust entertainment division, Tencent Film, which produces or helps to produce hit movies,

television shows, and music. *Id.* Tencent Film is one of the largest digital copyright content owners in China. Tencent Film produces and/or commissions other studios to produce television shows and movies in China and throughout the world.

Plaintiffs are copyright owners and rightsholders in thousands of works, including popular television shows and episodes, such as the television programs Three Body, the Untamed, and A Splendor Dream. *Id.* ¶ 46. Each show consists of multiple episodes (the "Tencent Shows"). *Id.* ¶¶ 49–53. Plaintiffs have obtained registration certificates from the United States Copyright Office for 254 of the Tencent Shows ("Registered Tencent Shows"). *Id.* ¶¶ 49, 53; *see also* Dkt. Nos. 89-1 through 89-9 and 89-11 (registration certificates for certain Registered Tencent Shows). The remaining 1,565 were not registered with the U.S. Copyright Office (except a small number that were registered more than 90 days after publication) at the time the Amended Complaint was filed but such works were published for the first time exclusively in China ("Unregistered Tencent Shows"). *Id.* ¶¶ 51, 53. Pursuant to Section 411(a) of the Copyright Act, Tencent is not required to register those foreign works with the U.S. Copyright Office before filing a lawsuit. *Id.* ¶¶ 54.

Tencent has spent billions of dollars filming, producing, and/or acquiring the Tencent Shows, and exclusive rights therein. *Id.* ¶ 56. The Tencent Shows are widely available on Chinese and U.S. television and streaming platforms, including through licensing agreements with Tencent to air on Chinese television channels, or stream via third party platforms such as Amazon Prime Video, Netflix, and Rakuten Viki. *Id.* ¶ 55. Tencent also offers its own streaming platform, Tencent Video (known as WeTV in China), through which customers have access to many of the Tencent Shows. *Id.* The Tencent Shows attract billions of playbacks and repeated views, making them extraordinarily valuable to Tencent. *Id.*

**B.      Defaulting Defendants' Piracy Business**

**1.      UnblockTech Is an Internationally Notorious Piracy Business**

The name "Unblock"—i.e., removing legitimate safeguards or "blocks" and granting unauthorized access to copyrighted materials—is an apt name given Defaulting Defendants' piracy enterprise. UnblockTech's bad-faith conduct is well known: in the International Intellectual Property Alliance's ("IIPA") 2023 Special 301 Report on Copyright Protection and Enforcement, the IIPA specifically mentioned that "[r]ights holders in China face problems from piracy apps and devices (including **illicit streaming devices (ISDs)** like . . . . Unblock Tech)." *See* Dkt. No. 89-10 ("IIPA 2023 Special Report") at 19, 179 (emphasis added). The IIPA similarly discussed that UnblockTech's piracy conducts caused severe harm to the Chinese content owners, such as Tencent. *See id.* at 20-21 ("The devices often target overseas users and their proprietary apps are not accessible in China, leaving rights holders without a remedy or, at best, with an uncertain remedy."). According to IIPA, "[i]t appears that Unblock Tech has more than 500 agents and distributors worldwide, and sellers and users of the device can be found across Asia Pacific, Europe, and the U.S. and Canada." *Id.* at 48 n. 11.

UBOXs sell for approximately $220-268 each, including to customers in this Judicial District. Am. Compl. ¶ 59. UnblockTech's website markets UBOXs as "Paid once Forever Free," to communicate that buying a UBOX grants unlimited, free access to thousands of movies and television shows, including Tencent's. *Id.* ¶ 60. UBOX purchasers watch movies and television shows through an application pre-selected and suggested by the UBOXs—"UPTV." *See id.* ¶¶ 75–82.

Piracy is easy on UBOXs. After connecting the UBOX to their television and the internet and selecting the function to watch videos in the UBOX interface, UBOX users are presented with a selection of suggested applications for watching pirated content. *Id.* ¶ 80. The content available

through the UBOX-exclusive apps is updated regularly, and resellers are notified when new pirated content is made available. *See id.* ¶ 84. One of these suggested applications is UPTV, a UBOX-exclusive application which is not available on popular app stores, such as the Apple Store and Google Play, likely because UPTV's primary purpose is piracy. *Id.* ¶ 77. Tencent has never authorized any of the Defendants to copy, import, display, or publicly perform any of the Tencent Shows, but each of the Tencent Shows are nonetheless available for streaming via UPTV on UBOXs. *Id.* ¶ 82. Since Tencent filed this case, UBOX has added other exclusive apps, such as UPCinema, UPVod2.0, which display massive amounts of pirated content, including newly released movies, TV shows, and streaming shows (including Netflix) in multiple languages and regions. Wang Decl. ¶¶ 10-12. IIPA's 2023 Report elaborated on Unblock's tactics of separating the UBOX from its infringing applications to circumvent law enforcement. *See* Dkt. No. 89-10 at 19 n. 11 ("Another issue is that illicit streaming devices (ISDs) are manufactured in China and can be modified to support the installation of third-party, pre-loaded, or postpurchase infringing applications, allowing consumers access to pirated content.").

### 2. Defaulting Defendant UnblockTech Was Criminally Prosecuted in Taiwan

UnblockTech is a serial infringer, and its leadership is no stranger to infringement liability. UnblockTech manufactures and distributes UBOXs, which are video streaming devices that use applications specifically designed for, and only available on, UBOXs to watch pirated television shows and movies. Am. Compl. ¶ 2. UnblockTech's CEO was indicted on criminal charges for mass copyright infringement offenses. He was accused of conspiring with Chinese partners to illegally pirate video content from 72 legal content owners and illegally distributing it online via overseas servers, including in the United States. *See* Wang Decl. ¶ 21; Ex. 29. The Taiwan "Ministry of Justice had asked the U.S. Department of Justice for assistance in obtaining the IP addresses and documents pertaining to the case." *See id.*

Despite the Court's temporary restraining order and preliminary injunction requiring all Defendants (including Defaulting Defendants) to cease UBOX sales, UnblockTech continues to manufacture and distribute infringing UBOXs around the world, including within the United States. Am. Compl. ¶ 8. And UnblockTech, which itself produces and distributes infringing UBOXs, is not the only player in the game of UBOX-related infringement.

### 3. Defaulting Defendant Dali Tongda and Its Downstream Distributors Are a Concerted Enterprise.

Defaulting Defendant Dali Tongda is a general distributor of UBOXs, selling these ISDs in bulk to downstream resellers, to individual resellers through Amazon, and directly through its website, www.unblocktechtvbox.com. *Id.* ¶ 23. Defaulting Defendants Unbo Store, HK-UB, and Hope Overseas are downstream resellers of UBOXs operating as "storefronts" on e-commerce platforms. Am. Compl. ¶¶ 15, 23, 24. Although these resellers appear as unique, individual storefronts, review of their activities and contents drives the conclusion that all are part of a single scheme. These parties' content repeatedly references the general distributor Dali Tongda, including by noting and using Dali Tonga's contact information and website, www.unblocktechtvbox.com. *See, e.g.,* Dkt. No. 19 ¶¶ 13–15 (Amazon customer support for Unbo Store directs to unblocktechtvbox.com website and contact information); Dkt. No. 18 ¶ 5 (customer service for HK-UB provided contact information for unblocktechtvbox.com). HK-UB and Unbo Store are among Dali Tongda's many Amazon storefronts. Am. Compl. ¶¶ 15, 24. Hope Overseas is another Dali Tongda affiliated seller, with Hope Overseas' Amazon storefront prominently displaying a UBOX with reference to the Dali Tongda website. Wang Decl. ¶ 20. Since Dali Tongda is a Hong Kong based distributor, it is unlikely that it receives the majority of its UBOXs from the (Taiwan-based) UnblockTech, a conclusion supported by the fact that Dali Tongda's "Certificate of Authorization" does not identify, specifically, UnblockTech Taiwan Co.

Limited, the full name of Defendant UnblockTech. *See* Ex. 30. As such, upon information and belief, Plaintiffs believe that Dali Tongda and its downstream distributors should be jointly and severally liable for a new stream of infringement, separate and apart from the stream of infringement by UnblockTech.

4. **Defaulting Defendants, in Blatant Contempt of the Court, Work in Concert to Subvert U.S. Copyright Laws**

The Defaulting Defendants operate in concert to subvert and violate U.S. copyright laws and disregard Tencent's copyrights. As discussed above, each Defaulting Defendant plays a role in an overall infringement scheme: UnblockTech (or its related manufacturers) manufactures infringing UBOXs, provides them to so-called "authorized distributors," who import the infringing UBOXs into the United States, including into this district, and provides the UBOXs to other sellers like Unbo Store, HK-UB, and other ephemeral "storefronts," who sell devices in the United States through various channels, such as eBay and Amazon. *Id.* ¶¶ 15, 16, 24.

Each of these entities operates as part of a group intended to provide cover from liability for their egregious conduct. UnblockTech and several of its distributors are located overseas, making copyright enforcement challenging, and the various sellers within the United States operate surreptitiously to avoid enforcement, including by periodically changing the names of their storefronts, on information and belief, for the purpose of evading detection. *See, e.g.*, *id.* ¶ 18 (Hope Overseas changed its name from "CHIHONG-HOPEOVERSEAS" to "InnovaTech Hub"). These name changes occurred *after* filing of Tencent's original complaint, showing a subjective awareness of the lawsuit, but a flagrant disregard of the obligations thereof.

Defaulting Defendants' bad faith and contempt for this Court's orders is egregious. After being served with the Amended Complaint, the Tencent Copyright Works identified in the Amended Complaint (and <u>only</u> those shows) were removed from the UBOX platform, showing a

subjective awareness on the part of the Defaulting Defendants of Tencent's copyrights, this litigation, and this Court's own orders. *See* Wang. Decl. ¶ 13. Despite this awareness, though, Defendants continued to blatantly disregard the preliminary injunction by selling UBOXs within the United States which offer other Tencent copyrighted works, including works which have been added since filing of the Amended Complaint. *Id.* ¶ 14.

Rather than comply with this Court's orders, Defaulting Defendants, like Dali Tongda and UnblockTech, continue to maintain active websites and engage in the same wrongful conduct, just under different names. *See id.* ¶¶ 3-8. This must be stopped.

## C.    All Defaulting Defendants Are in Default

Tencent filed its original complaint on April 21, 2023. Dkt. No. 1. An Amended Complaint was filed on July 14, 2023. Dkt. No. 89.

On June 4, 2024, the Court granted Tencent's motion to serve UnblockTech by alternative means. Dkt. No. 143. Consistent with the Court's Order, Plaintiff published a notice, containing information about the present action, in a newspaper with general circulation in the area where Defendant UnblockTech is believed to be headquartered and have offices. *See* Dkt. No. 156-1 (declaration supporting service by publication of UnblockTech). Notice of the Amended Complaint was published on September 16, 23, 30 and October 7 (four consecutive weeks). *Id.*

On May 4, 2023, the Court granted Tencent's motion to serve Dali Tongda, HK-UB, and Unbo Store by alternative means. Dkt. No. 20. Dali Tongda was served according to the Court's order via email and WeChat on May 20, 2023, and via a separate email address on May 26, 2023. Dkt. No. 31. HK-UB and Unbo Store were both served via WeChat on May 24, 2023 according to the Court's order, and via email on May 26, 2023. Dkt. No. 31. Tencent filed its amended complaint on July 14, 2023, and the amended complaint and exhibits were sent to the Dali Tongda,

-9-

HK-UB, and Unbo Store via email and WeChat on July 25, 2023. Dkt. No. 115-1 at ¶ 3. Hope Overseas was served by email on July 3, 2024, according to the Court's order. Dkt. No. 156.

None of the Defaulting Defendants have filed an answer or otherwise responded to Tencent's original or amended complaint.

At Tencent's request, the clerk entered default against Dali Tongda, HK-UB, and Unbo Store on September 21, 2023. Dkt. No. 116. Default was entered against Hope Overseas and UnblockTech on October 30, 2024. Dkt. No. 158. Defaulting Defendants continue to offer for sale the infringing UBOXs, despite this Court's injunction and in flagrant disregard of Tencent's rights. Am. Compl. ¶ 15.

### III.    ARGUMENT

#### A.    Legal Standard

Under Federal Rule of Civil Procedure 55, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). After a defendant has defaulted, "the party must apply to the court for a default judgment," and the Court may enter a final judgment without conducting a trial on liability. Fed. R. Civ. P. 55(b)(2); *Strange v. Glob. Virtual Opportunities, Inc.*, No. 6:18-cv-0180-ADA-JCM, 2019 WL 414961, at *1 (W.D. Tex. Jan. 8, 2019) (Albright, J.). The plaintiff must also file an affidavit stating whether the defendant is in military service before the Court can issue a default judgment. *Strange*, 2019 WL 414961, at *1 (citing 50 U.S.C. § 3931); *see also* Wang Decl. ¶ 3 (stating that no Defendants are in military service).

To determine whether entering a default judgment is appropriate, courts in the Fifth Circuit conduct a three-part analysis: "(1) was the default judgment procedurally proper; (2) if the default judgment was procedurally proper, are the plaintiff's claims meritorious; and (3) whether the

requested relief is appropriate." *Id.*; *see also R A Guthrie Co., Inc. v. Boparai*, No. 4:18-cv-080-ALM-KPJ, 2021 WL 1148957, at *3 (E.D. Tex. Mar. 1, 2021)). Each of these elements favors Tencent.

## B.    Default Judgment Is Procedurally Proper

Courts considers six factors to determine whether a default judgment is procedurally warranted:

> (1) Whether material issues of fact are at issue, (2) whether there has been substantial prejudice, (3) whether the grounds for default are clearly established, (4) whether the default was caused by a good faith mistake or excusable neglect, (5) the harshness of a default judgment, and (6) whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998); *see also Strange*, 2019 WL 414961, at *2 (citing these same factors); *R A Guthrie Co.*, 2021 WL 1148957, at *4 (same). Each of these factors demonstrate that default judgment is procedurally warranted against the Defaulting Defendants here.

***First***, there are no material issues of fact because Defaulting Defendants have gone unresponsive, and therefore have not disputed the facts. *Nishimatsu Constr. Co., Ltd. V. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("[A defaulting defendant] should not be given the opportunity to litigate what has already been considered admitted in law. The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact . . . ."); *Strange*, 2019 WL 414961, at *2 ("[Defendant] failed to file an answer; therefore, there are no material facts in dispute."). Because Defaulting Defendants have not filed an answer, there are no material facts in dispute.

***Second***, Tencent has suffered, and continues to suffer substantial prejudice because Defaulting Defendants' "failure to respond or otherwise appear 'threatens to bring the adversarial

process to a halt, effectively prejudicing [Tencent's] interests.'" *Strange*, 2019 WL 414961, at *2 (quoting *United States v. Padron*, No. 7:17-cv-00009, 2019 WL 2060308, at *3 (S.D. Tex. May 12, 2017)); *R A Guthrie Co.*, 2021 WL 1148957, at *4. Defaulting Defendants continue their wrongful conduct unabated, in violation of the Court's Preliminary Injunction order. Accordingly, the second *Lindsey* factor favors default judgment.

      *Third*, where, as here, the defendants in default have failed to answer or defend in the case, the grounds for default are clearly established—especially as the Court has entered default against each Defaulting Defendant. *Strange*, 2019 WL 414961, at *2; *Graham v. Coconut LLC*, No. 4:16-cv-606, 2017 WL 2600318, at *2 (E.D. Tex. June 15, 2017) ("[T]he grounds for default are clearly established because Defendant has been unresponsive, and if the failure to respond is plainly willful as reflected by the parties' failure to respond either to the summons and complaint, the entry of default, or the motion for default" then default judgment is appropriate.") (internal quotes omitted).

      *Fourth*, there is no indication in the record that Defaulting Defendants' default was caused by a good faith mistake or excusable neglect, and so this factor necessarily favors default judgment. *R A Guthrie Co.*, 2021 WL 1148957, at *5 (lack of explanation in filings or at a hearing weighs against finding of good faith mistake and excusable neglect). In fact, subjective evidence shows that Defaulting Defendants received the summons and Amended Complaint and have knowledge about the Tencent shows at issue. *See* Wang Decl. ¶ 13 (Tencent Shows in Amended Complaint taken off UPTV); Dkt. No. 118 at 4 (service packet provided to Defendants at known addresses). Indeed, Defaulting Defendants' actions—continuing to sell UBOXs in violation of this Court's preliminary injunction, changing the names of infringing storefronts, accusing the media of engaging in a "smear campaign," all while continuing to infringe—affirmatively show <u>bad</u> faith.

**Fifth**, default judgment is not unduly harsh on Defaulting Defendants, who have had ample notice of the lawsuit and sufficient time to respond. *See Cunningham v. Politi*, No. 4:18-cv-00362-ALM-CAN, 2020 WL 1808239, at *3 (E.D. Tex. Jan. 26, 2020) (entering default judgment after two months between service of complaint and motion for default judgment), *report and recommendation adopted*, 2020 WL 1703192 (E.D. Tex. Apr. 8, 2020). Here, each Defaulting Defendant has been served a copy of the Amended Complaint and each has failed to timely respond or otherwise engage in the litigation process. *See* Dkt. No. 115 (Entry of Default against Defendants Dali Tongda, Unbo, and HK-UB on September 20, 2023 (more than one year ago)); Dkt. No. 158 (Entry of Default against UnblockTech and Hope Overseas). Additionally, with respect to UnblockTech, Plaintiffs previously hand delivered a copy of the full service packet to the front desk office at UnblockTech's address in New Taipei City and delivered a packet to UnblockTech's Minzu Street address on July 28, 2023, even before Plaintiff's service by publication. *See* Dkt. No. 118 at 4.

In addition, Tencent seeks a reasonable, even conservative estimate of what it is entitled to recover under the Copyright Act's statutory damages provisions, such that entry of default judgment against Defaulting Defendants would not be unreasonably harsh. *Graham*, 2017 WL 2600318, at *2 (harshness of default judgment not great because plaintiff is "only seeking the relief to which she is entitled under the FLSA") (internal quotes omitted).

**Sixth**, there are no reasons why the Court should set aside the default motion, particularly where, as here, Defaulting Defendants have received repeated notice of the lawsuit and have failed to respond, which suggests that the lack of appearance is willful. *R A Guthrie Co.*, 2021 WL 1148957, at *5 ("The repeated service on Defendants without answer suggests Defendants' lack of appearance was willful . . . ."). As discussed above, evidence shows that Defaulting Defendants

have in-depth, specific knowledge of this lawsuit and chose to not participate in this legal proceeding. Defaulting Defendants' conduct evidences their awareness of this lawsuit, but they have chosen not to participate. Default judgment is warranted.

Accordingly, each of the six *Lindsey* factors favor default judgment, and default judgment is therefore procedurally warranted.

## C.    Tencent's Copyright Infringement Claims Are Meritorious

Federal Rule of Civil Procedure 8 is applied in the Fifth Circuit to evaluate the sufficiency of a plaintiff's pleadings. *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015). The complaint must provide fair notice of the claims and the grounds upon which those claims rest. *Id.* While the factual allegations do not need to be detailed, they must raise a right to relief "above the speculative level." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "'Defendants in default are deemed to have admitted the allegations set forth in a plaintiff's complaint.'" *R A Guthrie Co.*, 2021 WL 1148957, at *5 (quoting *Graham v. Coconut LLC*, 2017 WL 2600318, at *2 (E.D. Tex. June 15, 2017)).

### 1.    Tencent's Direct Copyright Infringement Claim (asserted against UnblockTech)

Tencent must plead two elements to show that UnblockTech has directly infringed Tencent's copyrights: (1) Tencent owns copyrighted materials, (2) copying by the Defendant. *Pell & Co., Inc. v. The Rug Market*, 238 F.3d 391, 394 (5th Cir. 2001) (citing *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 790 (5th Cir. 1999)). As the Court has already held by granting Tencent's *ex parte* application for a temporary restraining order, motion for preliminary injunction, and motion to modify Plaintiffs' preliminary injunction (Dkt. Nos. 15, 79, and 85), each of these elements is satisfied with respect to UnblockTech.

### a.    Tencent's Copyrights

Tencent owns copyrights in the Tencent Shows. "To establish 'ownership,' the plaintiff must prove that the material is original, that it can be copyrighted, and that [the plaintiff] has complied with statutory formalities." *Lakedreams*, 932 F.2d at 1107–08. "A certificate of registration . . . is prima facie evidence both that a copyright is valid and that the registrant owns the copyright." *Gen. Univ. Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004). Ordinarily, where the plaintiff claims infringement of a "United States work," that work must first be registered prior to the infringement action. *See* 17 U.S.C. § 411(a). Here, 101 of the Tencent Shows were registered when the original complaint was filed.[2] Am. Compl. ¶¶ 49–50; Dkt. No. 89-1 through 89-9 and 89-11 (registration certificates).

The remaining Tencent Shows are not "United States works" and thus not subject to the pre-suit registration requirement. A work that has been published is a "United States work" if it was first published: (A) in the United States, (B) simultaneously in the United States and another treaty party or parties whose law grants a term of copyright protection that is the same or longer than the term provided in the United States, (C) simultaneously in the United States and a foreign nation that is not a treaty party, or (D) in a foreign nation that is not a treaty party, and all of the authors of the work are nationals, domiciliaries, or habitual residents of, or in the case of an audiovisual work legal entities with headquarters in, the United States. 17 U.S.C. § 101. None of the unregistered Tencent Shows are "United States works." The unregistered Tencent Shows are published works that were first published in China and were not simultaneously published in the United States. Am. Compl. ¶¶ 51–54. In addition, the authors of the Tencent Shows are entities

---

[2] Defendant UnblockTech later added more Tencent Shows to its library after Tencent's original complaint was filed. Am. Compl. ¶ 53. 11 of these Tencent Shows were registered prior to Tencent's filing of its Amended Complaint. *Id.*; Dkt. No. 89-11.

organized under the laws of China and are not nationals, domiciliaries, or habitual residents of the United States, nor do the entities have a headquarters in the United States. *Id.* at ¶ 48. Thus, the unregistered Tencent Shows do not meet the statutory definition of "United States works" and are exempt from the registration requirement.

### b.    Defendant UnblockTech's Direct Infringement

As set forth in both Plaintiff's originally filed complaint, amended complaint, and motion for preliminary injunction, the only way UnblockTech could provide its video on demand service through its UBOXs is by the unauthorized download of the Tencent Shows and distribution to UBOXs through the UPTV application. *See, e.g.*, Dkt. No. 11 at 11, Dkt. No. 89 ¶¶ 98-112. Through these devices and application, UnblockTech has imported, reproduced, publicly performed, and distributed the Tencent Shows throughout the United States. Dkt. No. 11 at 13. UnblockTech regularly updates its resellers with the status of UnblockTech servers and users (when a UBOX is not functioning) are directed to a website—ub.com—to access the infringing content. *Id.* Tencent did not and has never authorized UnblockTech to make or maintain copies of the Tencent Shows on any servers. *Id.* The pirated episodes of the Tencent Shows streamed through the UBOXs are exact copies of the Tencent Shows. *Id.* Accordingly, both copying and distribution of the Tencent Shows have been established and UnblockTech, through its default, has not disputed any of these claims. *Am. Broadcasting Cos., Inc. v. Aereo, Inv.*, 134 S. Ct. 2498, 2509-10 (2014) (streaming television programming to subscribers over the internet violate program owners' public performance rights).

Defendant UnblockTech not only encouraged but also enabled this infringement willfully and with full knowledge that their activity would infringe Tencent's copyrights, and thus has willfully infringed Tencent's copyrights. UnblockTech has received actual and constructive knowledge of its infringement through the multiple service attempts made by Plaintiff and yet

continues to offer for sale the infringing UBOXs. *See Broadcast Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233, 236 (5th Cir. 1988) ("A defendant acts 'willfully' within the meaning of § 504I(2), however, if he knows his actions constitute an infringement . . . ."). This continued activity occurs not only with reckless disregard for Tencent's copyrights, but in flagrant violation of this Court's Preliminary Injunction, which explicitly prohibits the Defaulting Defendants (including UnblockTech) from "importing, transmitting, or distributing the Tencent Shows over the Internet . . . including through any UBOX or similar product and/or through the UPTV or similar application." Dkt. No. 79 at 2.

UnblockTech's knowledge of this litigation (despite its failure to participate) is also reflected in its behavior. Since the filing of the Amended Complaint, UnblockTech has removed some, but not all, Tencent Shows from the UPTV application—showing a subjective awareness of not only this litigation but of the infringing nature of their conduct. More recently-released Tencent Shows[3] (*i.e.*, those released since the filing of the Amended Complaint), which are also covered by Tencent Copyrights, continue to be offered on UBOXs.

### 2.     Tencent's Contributory Copyright Infringement Claim (against all Defaulting Defendants)

Tencent must plead four elements to state a claim for contributory infringement: (1) Tencent owns copyrighted material, (2) direct infringement by another, (3) Defaulting Defendants knew of the infringing activity, and (4) Defaulting Defendants induced, caused, or materially contributed to it. *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 790 (5th Cir. 1999). As the

---

[3] These new shows are identified in the attached Declaration of Chao "Wendy" Wang at paragraphs 16-19, including their registration status. Since such shows are Tencent's copyrighted works, they are equally subject to this Court's Preliminary Injunction, which prohibits "copying, publicly displaying, publicly performing, distributing, importing, or creating derivative works of Plaintiffs' copyrighted works, including **but not limited to,** those listed in Exhibit A attached to this Order." Dkt. No. 79 at 2 (emphasis added).

Court has already held by granting Tencent's *ex parte* application for a temporary restraining order and motion for preliminary injunction (Dkt. Nos. 15, 79), each element is satisfied here against all Defaulting Defendants. As explained above, there is no dispute that Tencent owns valid copyrights in the Tencent Shows. *See supra* at Section III.11.a.

### a.    Defaulting Defendant UnblockTech's Contributory Infringement

To the extent that UnblockTech has not directly infringed on Tencent's copyrights, UnblockTech contributorily infringed Tencent's copyrights in the Tencent Shows because there was underlying direct infringement that Defaulting Defendants knew about and induced, caused, or materially contributed to. The Tencent Shows were copied onto the UPTV/UnblockTech servers, imported, and distributed into the United States without Tencent's authorization. Am. Compl. ¶¶ 86–87. Every time an episode of the Tencent Show is streamed from the UPTV servers to a UBOX in the U.S., the Tencent Show is publicly performed by the streaming party in violation of Plaintiffs' copyrights, i.e., direct infringement. *Am. Broadcasting Cos.*, 134 S. Ct. at 2509–10; *DISH Network L.L.C. v. Khalid*, No. H-19-4563, 2021 WL 765709, at *4 (S.D. Tex. Feb. 23, 2021) (granting motion for default judgment on contributory copyright infringement claim where underlying direct infringement was third parties transmitting works over the internet to viewers); *see also* Am. Compl. ¶ 82.

UnblockTech knows of this infringing activity and induced, caused, or materially contributed to it. In a similar case concerning a set-top device that connects to a TV to provide users access to applications for streaming pirated copies of copyright protected television shows and movies, the court there held that the defendant's advertising of infringing content, provision of customer support for the purpose of facilitating infringement, lack of filtering mechanisms to prevent infringement, and retention of infringement-related profits were all strong evidence of contributory infringement. *Universal City Studios Productions LLP v. TickBox TV LLC*, No. CV

17-7496-MWF (ASx), 2018 WL 1568698, at *10–11 (C.D. Cal. Jan. 30, 2018). The entire purpose of the UBOX as advertised by UnblockTech is to enable customers to access pirated content, like the Tencent Shows, for free. The first time every UBOX customer attempts to watch videos on a UBOX, they are prompted to install the UBOX-exclusive "UPTV" application, which is solely intended to facilitate UBOX customers' access to pirated copies of television shows. Am. Compl. ¶¶ 75–77, 80.

UnblockTech prominently advertises its own customer support for UBOXs. A one-year warranty for all UBOXs is available only through authorized distributors, like Defaulting Defendants. Am. Compl. ¶ 73. The UPTV application was available to access through ub.com. *Id.* UBOXs slogan, "Paid once, Free forever," couldn't be clearer on infringement: a key selling point is that purchasing a UBOX grants unlimited access to streaming content, in perpetuity. *See* Am. Compl. at 2; Dkt. No. 11 at 4. That is not how content licensing works. Defaulting Defendants also hold themselves out to consumers as associated with UnblockTech and its affiliates, providing information about customer service available through WeChat channels, and providing information about when UPTV servers will be down and other maintenance information. *See* Dkt. No. 11, Ex. O.

Through the UPTV application, UBOX customers have the ability to immediately stream hundreds of episodes of the Tencent Shows. Am. Compl. ¶ 82. Given the popularity of the Tencent Shows and as the apparent primary purpose of the UBOX is to pirate copyright-protected content, the profits earned by Defendant UnblockTech through sales of the UBOX are directly attributable to its infringement, and its profits from these sales further supports its liability for contributory infringement. Accordingly, Tencent has pled a meritorious claim for contributory copyright infringement against UnblockTech.

### b. Contributory Infringement of Defaulting Defendants Dali Tongda, Unbo Store, and HK-UB

Defaulting Defendants Dali Tongda, Unbo Store, and HK-UB also contributorily infringe Tencent's copyrights by their knowing involvement, cause, inducement, and material contribution to direct infringement. Facilitated by these Defaulting Defendants, the Tencent Shows were copied onto the UPTV/Unblock servers, imported, distributed into, and displayed and performed within the United States without Tencent's authorization. Am. Compl. ¶¶ 86–87. Every time an episode of the Tencent Show is streamed from the UPTV servers to a UBOX in the U.S., the Tencent Show is publicly performed by the streaming party in violation of Plaintiffs' copyrights: this is direct infringement. *Am. Broadcasting Cos.*, 134 S. Ct. at 2509–10; *DISH Network L.L.C. v. Khalid*, No. H-19-4563, 2021 WL 765709, at *4 (S.D. Tex. Feb. 23, 2021) (granting motion for default judgment on contributory copyright infringement claim where underlying direct infringement was third parties transmitting works over the internet to viewers); Am. Compl. ¶ 82.

Defaulting Defendants know of this infringing activity and induced, caused, or materially contributed to it. A defendant's advertising of infringing content, provision of customer support for the purpose of facilitating infringement, lack of filtering mechanisms to prevent infringement, and retention of infringement-related profits were all strong evidence of contributory infringement. *See Universal City Studios Productions LLLP v. TickBox TV LLC*, No. CV 17-7496-MWF (ASx), 2018 WL 1568698, at *10–11 (C.D. Cal. Jan. 30, 2018). Defaulting Defendants are interrelated entities that together hold themselves out as "authorized distributors" of UBOXs, and therefore know of the primarily infringing purpose of the UBOX. Am. Compl. ¶ 69. Indeed, the entire purpose of the UBOX as advertised by Defaulting Defendants is to enable their customers to access pirated copies of television shows, like the Tencent Shows, for free. UBOX customers are

prompted to install the UBOX-affiliated applications, the sole purpose of which is to allow UBOX customers to watch pirated copies of television shows. Am. Compl. ¶¶ 75–77, 80.

Defendants also prominently advertise that they provide customer support for their pirating UBOXs. For example, a one-year warranty for all UBOXs is available only through authorized distributors, like Defaulting Defendants. Am. Compl. ¶ 73. Dali Tongda also directed UBOX users to a website called ub.com—an obvious reference to "Unblock"Tech—when asked how a UBOX owner could watch content through the UBOX-affiliated applications if the UBOX was ever damaged or not usable. Dkt. No. 11 at 8. The UPTV application was available to access through the UBOX interface. Wang Decl. ¶ 10. In addition, authorized distributors like Defaulting Defendants maintain WeChat and/or WhatsApp accounts to offer follow-up customer service to UBOX purchasers. Am. Compl. ¶ 74. UBOX owners are immediately able to stream hundreds of episodes of the Tencent Shows. Am. Compl. ¶ 82. Given the popularity of the Tencent Shows and the fact that the exclusive purpose of the UBOX appears to be to pirate copyright-protected content, these Defaulting Defendants' profits are attributable to direct and contributory copyright infringement.

### 3.    Defendant UnblockTech's Vicarious Infringement

UnblockTech is also _vicariously_ liable for copyright infringement, as UnblockTech's conduct satisfies both elements: it has a right and ability to supervise direct infringers and profits directly from the infringement. _MetroGoldwyn-Myer Studios, Inc. v. Grokster, Ltd._, 545 U.S. 913, 931 n.9 (2005); _DynaStudy, Inc. v. Houston Indep. Sch. Dist._, 325 F. Supp. 3d 767, 777 (S.D. Tex. 2017). UnblockTech exercises both the right and the ability to supervise direct infringers. UnblockTech manufactures the UBOXs and sells them directly to consumers, or to resellers who in turn sell the UBOXs directly to consumers. _See_ Dkt. 11 at 16. UnblockTech could remove UPTV (the application which enables infringement on the UBOX devices and through which users

directly access the pirated Tencent Shows), caution its users against installation of UPTV, or even remove the pirated Tencent Shows from UPTV. To date, UnblockTech has taken none of these steps, and many Tencent Shows remain available for viewing on UBOXs without Tencent's authorization. The right and ability to supervise element is found where the defendant *could have* stopped the infringing activity but declined to do so. *Stross v. Realty Austin, LLC*, No. 1:20-cv-01071-RP, 2021 WL 2942399, at *4-5 (W.D. Tex. July 13, 2021). Here, UnblockTech has failed to take steps to curb direct infringement of the Tencent shows, despite its ability to do so. Additionally, UnblockTech profits from direct infringement. UnblockTech charges $220-268 per UBOX (which are sold directly to consumers or sold through authorized resellers). UnblockTech therefore directly financially benefits from the sale of UBOXs. *See* Dkt. No. 11 at 16; Am. Compl. ¶¶ 59, 60, 134, 135. As such, UnblockTech is vicariously liable for each instance of infringement.

## D.    Tencent's Requested Relief Is Appropriate

Tencent requests damages of $15,150,000 in statutory damages in connection with the statutorily eligible Registered Tencent Shows and $27,225,000 in actual damages for the remaining Tencent Shows, for a total of $42,375,000 in damages with respect to the Tencent Shows. Defaulting Defendants each provide infringing UBOXs and services related thereto, so they each contribute to Tencent's damages and should be separately liable for their own acts of infringement. UnblockTech and Dali Tongda both act as the top-most "upstream" infringer,[4] and thus are each responsible for damages to Tencent, resulting in two separable instances of the total

---

[4] As Dali Tongda does not identify UnblockTech Taiwan as its manufacturer, and is a Hong Kong based entity, it is possible Dali Tongda receives UBOXs from another manufacturer. As such, they act as an upstream infringer and may be separately liable for damages. *See Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253 (9th Cir. 2021) ("Each upstream infringer was a 'but for' cause of all downstream infringements in its chain of distribution, because absent the upstream infringer's distribution, no downstream infringer would have received any infringing item.").

claimed damages. UnblockTech should be held liable for a total of $42,375,000. Similarly, Dali

Tongda, as the upstream general distributor, should also be held liable for a total of $42,375,000.

Hope Overseas, HK-UB, and Unbo Store, as downstream storefronts of Dali Tongda, should be

held jointly and severally liable with Dali Tongda for a total of $42,375,000.

Tencent also requests entry of a permanent injunction against each Defaulting Defendant

to prevent any future infringement of the Tencent Shows.

### 1.    Statutory Damages for Eligible Registered Tencent Shows

Once a court determines that default judgment should be granted, "the court has 'wide

latitude' to determine damages without first holding a hearing if the 'amount claimed is a

liquidated sum or one capable of mathematical calculation.'" *DISH Network L.L.C.*, 2021 WL

765709 at *5 (quoting *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993)). Statutory damages under

the Copyright Act is one such case. *Id.* The plaintiff in a copyright infringement action may elect

to pursue either (1) actual damages plus the infringer's profits, or (2) statutory damages. 17 U.S.C.

§ 504(a), (c). Statutory damages are available only for registered works where the infringement

commences after the effective date of registration or where the registration is made within three

months after first publication of the work. 17 U.S.C. § 412. Here, Tencent elects to pursue statutory

damages for the 101 works that were registered within 3 months after their first date of publication.

Dkt. Nos. 89-1 at 16–31 (My Deepest Dream, Eps. 13, 15-18 and 25); 89-2 at 10–25 (Cute

Bodyguard, Eps. 11-16); 89-3 (Winter Night, Eps. 5, 6, 8, 10, 11, 15); 89-4 at 16–41 (She and Her

Perfect Husband, Eps. 27-30, 35 and 40); 89-5 (Women Walk The Line, Eps. 1, 2, 10-12, and 20);

89-7 (Accidentally Meow On You, Eps. 1-6); 89-8 (Time and Him are Just Right, Eps. 1–6); 89-9

(Three Body, Ep. 1-3, 7, 8 and 10); Wang Decl. ¶ 16 (Will Love in Spring, Ep. 1-21); *id.* (Xiao Ri

Zi, Ep. 1-26); *id.* (The Long Season, Ep. 1-4, 6 and 7).

The Court is afforded broad discretion in determining the amount of statutory damages per work infringed within the range prescribed by the Copyright Act. *See R A Guthrie Co., Inc. v. Boparai*, No. 4:18-cv-080-ALM-KPJ, 2021 WL 1148957, at *9 (E.D. Tex. Mar. 1, 2021). Ordinarily, a plaintiff that elects to recover statutory damages may recover between $750 and $30,000 per work infringed. 17 U.S.C. § 504(c)(1). However, where the defendants' infringement is willful, a plaintiff may recover up to $150,000 per work infringed. 17 U.S.C. § 504(c)(2). A defendant acts willfully if he either knows his actions constitute infringement, or where the defendant acts with reckless disregard for plaintiff's rights. *Motionware Enters., Inc. v. Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule A*, No. 1:22-CV-1225-RP, 2023 WL 6977940, at *5 (W.D. Tex. Sept. 13, 2023), *rep. and recommend. adopted*, 2023 WL 6979603 (W.D. Tex. Oct. 23, 2023). In either case, the defendant's acts need not have been malicious to constitute willfulness. *R A Guthrie Co., Inc.*, 2021 WL 1148957, at *10.

"In copyright infringement cases, statutory damages should be awarded in an amount sufficient to deter future copyright infringement by making compliance less costly than violation." *BVE Brands, LLC v. Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule A*, No. 1-22-CV-278-RP, 2023 WL 5108960, at *6 (W.D. Tex. June 23, 2023), *rep. and recommend. adopted*, 2023 WL 5116551 (W.D. Tex. Aug. 9, 2023). In deciding the appropriate amount of statutory damages, the court may consider the infringer's profits, the copyright holder's damages, and "the difficulties in the way of proof of either." *Id.* (quoting *F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 232 (1952)). In particular, "[c]ourts also consider whether a defendant has cooperated in providing records from which to assess the value of the infringing material." *R A Guthrie Co., Inc.*, 2021 WL 1148957, at *12 (quoting *US Green Bldg. Council, Inc. v. Wardell*, No. 3:14-cv-01541-M-BH, 2016 WL 3752964, at *5 (N.D. Tex. June 17, 2016), *rep.*

*and recommend. adopted*, 2016 WL 3766362 (N.D. Tex. July 11, 2016)); *see also DISH Network L.L.C.*, 2021 WL 765709, at *7 (granting default judgment and awarding $150,000 per work in part because defendant "should not be rewarded for his failure to defend this case, which effectively precluded [plaintiff] from calculating actual damages and profits").

Defaulting Defendants' entire business is built on infringement. This award is justified given Defaulting Defendants' egregious willfulness, the scope of its infringement, and its failure to participate in these proceedings, which deprived Tencent of its ability to calculate actual damages. A finding of willfulness is appropriate here. UnblockTech and Dali Tongda are aware that the UBOXs sold are intended for pirating television shows, including, specifically, the Tencent Shows. Am. Compl. ¶ 92; *see also* Dkt. No. 19 ¶¶ 13–15; Dkt. No. 18 ¶ 5. UnblockTech's website prominently advertised the UBOX as "Paid once Forever Free," essentially broadcasting the primary purpose of the UBOXs as a means of infringement. Am. Compl. ¶¶ 60, 63, 64, 69.

Because Defaulting Defendants have not participated in this lawsuit, including discovery, Tencent cannot possibly know how many customers Defaulting Defendants have been able to reach or how many times the Tencent Shows were illegally streamed. *See* Dkt. No. 116. Whatever its UBOX sales were, its margins were likely substantial, as it doesn't develop its own content – it just steals others' valuable copyrighted works. UnblockTech sold UBOXs for anywhere between $220 and $268. Am. Compl. ¶ 59. It also paid nothing to illegally acquire the Tencent Shows, having done so without Tencent's knowledge or authorization, further inflating its margins. Am. Compl. ¶ 82; *DISH Networks L.L.C.*, 2021 WL 765709, at *6 (awarding $150,000 per work infringed against defaulting defendant that illegally streamed televised works in part because "[defendant] likely made substantial profits from his infringing activity" where he "offered a product . . . that cost him nothing to produce").

A statutory damages award of $150,000 per work infringed for a total of $15,150,000 is warranted against each of UnblockTech and Dali Tongda (jointly and severally with Hope Overseas, HK-UB, and Unbo Store).

### 2. Actual Damages for All Other Tencent Shows

Where statutory damages are not available, plaintiff may still recover "the actual damages suffered by him or her as a result of the infringement, and any profits of the infringement that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). Actual damages may be calculated by "measuring the 'market value of the fee the owner was entitled to charge for [the infringer's] use' of his copyrighted work." *Verch v. White Rock Security Grp., LLC*, No. 3:19-cv-1457-S, 2020 WL 4550419, at *3 (N.D. Tex. June 30, 2020) (quoting *On Davis v. The Gap, Inc.*, 346 F.3d 152, 159 (2d Cir. 2001)).

For the 1,565 remaining Tencent Shows (1,543 unregistered Tencent Shows (of which 439 were added after the Court's Preliminary Injunction) and 22 registered Tencent Shows that are ineligible for statutory damages), since the Defaulting Defendants have not participated in this lawsuit, Tencent cannot know the illegal profits which Defaulting Defendants have received from these works. Tencent has expended significant efforts to promote its exclusive TV contents in the United States, including collaboration with a variety of Chinese and United States television and streaming platforms, including Amazon Prime Video, Netflix, and Rakuten Viki. Tencent also offers its own streaming platform, WeTV, for a subscription fee of $64.99 per year through which customers can access the Tencent exclusive shows. When Defaulting Defendants' customers stream the same Tencent Shows through Defaulting Defendants' streaming, it diminishes the value of Tencent's license to third party streaming platforms and deprives Tencent of revenue it would have obtained had the customers streamed the Tencent Shows through WeTV. Defaulting

Defendants' blatant infringement harms Tencent's market for licensing and monetizing its copyrighted contents in the United States – the typical revenue stream for works of this nature.

Tencent therefore seeks $30,000 in damages, each, for 250 total unregistered works that have met with significant commercial success, are shown widely throughout China, and have won various accolades, awards, and goodwill for Tencent (the "Award-Winning Shows"). Declaration of Jiaojiao "Jenny" Song ¶ 6 ("Song Decl."). The Award-Winning Shows include a total of 250 such works: Pearl Eclipse (48 episodes), Soul Land (40 episodes), The Oath of Love (32 episodes), The Untamed (50 episodes), Who Rules the World (40 episodes), and A Dream of Splendor (40 episodes). *Id.* For example, the show "The Untamed" was referred to as a "blockbuster smash" and hit ten billion streaming views in 2021. In total, Tencent seeks $7,500,000 for the Award-Winning Shows. Such an award is reasonable and appropriate in the circumstances and would reflect a reasonable market value of the works, as supported by the Declaration of Ms. Song. *See White Rock Security Grp., LLC*, 2020 WL 4550419, at *3.

For each remaining infringed, unregistered work, a total of 1,315 works, Tencent seeks $15,000 in damages, which equals one tenth the statutory damages available, and sought, for the registered works and which totals $19,725,000. Such an award is reasonable and appropriate and would reflect a reasonable market value of the works. Together, these result in an award of $27,225,000 against each of UnblockTech and Dali Tongda (jointly and severally with HK-UB, Unbo Store, and Hope Overseas), totaling $54,450,000. This award is justified given Defaulting Defendants' willfulness, the scope of their infringement, their failure to participate in these proceedings, and their malicious, bad-faith conduct in seeking to avoid liability.

### 3.    Injunctive Relief

Finally, Tencent seeks a permanent injunction that enjoins Defaulting Defendants from infringing Tencent's rights in the Tencent Shows and selling UBOXs. The Copyright Act

authorizes the Court to "grant . . . final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). A plaintiff requesting a permanent injunction must demonstrate "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *DISH Network L.L.C.*, 2021 WL 765709, at *7 (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)); *R A Guthrie Co., Inc.*, 2021 WL 1148957, at *16 (same). Each of these factors is readily satisfied here.

"The first and second requirements . . are often indistinguishable," and both favor a permanent injunction here. *R A Guthrie Co., Inc.*, 2021 WL 1148957, at *16. Tencent has suffered irreparable harm from infringement for which monetary harm will not compensate. Despite the Court's temporary restraining order and preliminary injunction, the Defaulting Defendants either ignored it or attempted to circumvent it. *Id.* (finding that defendants continued offering offending products, and the likelihood that they would continue, supported finding of irreparable harm). For example, Dali Tonga continues to operate its website unblocktechtvbox.com and sell UBOXs and UBOXs are still available for sale through multiple ecommerce platforms, such as Amazon, eBay, and AliExpress. In fact, since the filing of the Amended Complaint, the UBOXs continue to add new shows without authorization or license, including Tencent Shows. Moreover, irreparable harm that is not compensable by monetary damages may also include loss of control and damage to reputation and goodwill caused by the unauthorized copying and distribution of the plaintiff's work, and where the unauthorized distribution of a copyrighted work draws customers away from plaintiff's authorized channels. *DISH Network L.L.C.*, 2021 WL 765709, at *7 (harm to business

reputation and goodwill); *Prep Solns., Ltd. v. Leicht*, No. 2:22-CV-123-JRG-RSP, 2022 WL 1812298, at *3–4 (E.D. Tex. June 2, 2022) (unauthorized distributions and loss of customers). Both concerns are applicable here. Once a customer purchases a UBOX, they have unlimited access to any of the Tencent Shows on demand and would therefore never need authorized channels again, forever depriving Tencent of that customer. In addition, Tencent's reputation and goodwill with the partners that distribute the Tencent Shows through authorized channels is irreparably harmed absent a permanent injunction because the unauthorized distribution of the Tencent Shows via Defaulting Defendants undermines the value of any license to the Tencent Shows. Tencent's reputation with consumers is also at risk—if its copyrighted works are disseminated through unreliable channels and providers, consumers may reject these contents moving forward.

The final two factors—balance of equities and public interest—also favor a permanent injunction. "[I]t is not a burden to the Defendants to follow the law and stop [infringement]." *Twist & Shout Music v. Longneck Xpress, NP*, 441 F. Supp. 2d 782, 785 (E.D. Tex. 2006). Defaulting Defendants face *no* damage by entry and enforcement of a permanent injunction here—rather they would only be prevented from further egregious and willful violations of Tencent's copyrights. Merely complying with the law, which is all the requested injunction seeks to do, would impose no burden on Defaulting Defendants, whereas Tencent stands to suffer substantial irreparable harm without such an injunction.

Finally, a permanent injunction serves the public interest because "it is in the public's interest that the law designed to protect and reward innovation and creativity be enforced." *DISH Network L.L.C.*, 2021 WL 765709, at *8; *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 517–18 (1994) ("[C]opyright law ultimately serves the purpose of enriching the general public through access to

creative works."). Even to the extent that any of the Defaulting Defendants may have temporarily paused their infringing conduct, such voluntary cessation does nothing to protect against future infringement by these same entities—or however they may choose to rename themselves in the future. *See Broadcast Music, Inc. v. Tex Border Management, Inc.*, 11 F. Supp. 3d 689, 698 (N.D. Tex. 2014) ("Courts have traditionally granted permanent injunctions, if liability is established and a continuing threat to the copyright exists.") (quoting *Fermata Int'l Melodies, Inc. v. Champions Golf Club, Inc.*, 712 F. Supp. 1257 (S.D. Tex. 1989)). Here, absent a permanent injunction by the Court, there is nothing to prevent Defaulting Defendants not only from continuing their practice of adding new Tencent Shows to their offerings, but re-listing Tencent Shows that were removed.

## IV.     CONCLUSION

For the foregoing reasons, Tencent respectfully requests that the Court grant its motion for default judgment against Defaulting Defendants, award total damages, joint and severally, against Defaulting Defendants as requested above, and enter a permanent injunction against Defaulting Defendants.

Dated: November 25, 2024

Respectfully submitted,

*/s/ Chao Wang*
Chao Wang, Bar No. 289325 (*pro hac vice*)
wendy.wang@bakerbotts.com
BAKER BOTTS LLP
1001 Page Mill Road Building One, Suite 200
Palo Alto, California 94304-1007

Jose Villarreal
BAKER BOTTS L.L.P.
401 South 1st Street
Suite 1300
Austin, TX 78704
Tel: (512) 322-2551
Email: jose.villarreal@bakerbotts.com

Cheryl A. Cauley (*pro hac vice*)
CA Bar No. 252262
BAKER BOTTS L.L.P.
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304
Tel: (650) 739-7557
Email: cheryl.cauley@bakerbotts.com

**Attorneys for Plaintiffs**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on November 25, 2024 to all counsel of record, via the Court's CM/ECF system.

*/s/ Chao Wang*
Chao Wang